## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **GEZIM SELGJEKAJ**, <br><br> Plaintiff, <br><br> v. <br><br> **EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS**, *et al.*, <br><br> Defendants. | Case No. 20-cv-2145 (CRC) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Gezim Selgjekaj, proceeding *pro se*, has sued the Executive Office for United States Attorneys ("EOUSA") under the Freedom of Information Act ("FOIA") for access to certain records related to his 2013 indictment in the Northern District of Ohio. EOUSA has produced some of the requested records but withheld others, citing FOIA exemptions that protect personal privacy and the secrecy of grand jury proceedings. Both sides now seek summary judgment.

The Court will grant partial summary judgment to EOUSA. The record establishes that most of the agency's assertions of FOIA exemptions are justified. However, genuine disputes of material fact remain as to the adequacy of EOUSA's searches and its rationale for categorically refusing to produce any orders that reflect the commencement, termination, or extension of any grand jury that heard evidence in Mr. Selgjekaj's case.

## I.   Background

In 2013, Selgjekaj was indicted in the Northern District of Ohio for fraud and other alleged crimes in connection with the collapse of the St. Paul Croatian Federal Credit Union. <u>United States v. Selgjekaj</u>, No. 1:13CR09, 2015 WL 5172958, at *1 (N.D. Ohio Sept. 3, 2015).

A federal jury convicted him in 2015.  Id.  He is currently serving a lengthy prison sentence stemming from that conviction.

Selgjekaj submitted a FOIA request to EOUSA in August 2018, seeking "[a]ll Grand Jury indictment brought against myself, GEZIM SELGJEKAJ, as a defendant along with ALL attached information sheets, in the United States District Court for the Northern District of Ohio Eastern Division."  First Wilkinson Decl. Exh. B, ECF No. 7-4 at 5.  After searching for records responsive to the 2018 FOIA request, EOUSA released 44 pages in full, released three partially redacted pages, and withheld three pages in full.  First Wilkinson Decl. Exh. F, ECF No. 7-4 at 19.  To justify its withholdings, EOUSA cited FOIA Exemption 5, which shields certain privileged materials, 5 U.S.C. § 552(b)(5); Exemption 6, which protects individuals against undue invasions of personal privacy, id. § 552(b)(6); and Exemption 7(C), which applies to some law enforcement records that implicate privacy concerns, id. § 552(b)(7)(C).

In May 2019, Selgjekaj sent EOUSA another FOIA request pertaining to his criminal case.  The 2019 FOIA request sought:

> 1) All orders that reflect the Commencement, Termination, and any extensions of the Grand Jurys that heard evidence in this matter;
> 2) Transcripts of the instructions and charges given to any Grand Jury that heard evidence in this matter;
> 3) All Grand Jury voting records from all Grand Jurys that heard evidence in this matter[;]
> 4) All Grand Jury attendance records including names, times, and dates, of all Grand Jurors that heard evidence in this matter[, and]
> [5]) a copy of the applicable rules and regulations of your agency, as provided for by the Freedom of Information/Privacy Acts, as amended by public law 93-502, 88 stat. 1561.

First Wilkinson Decl. Exh. G, ECF No. 7-4 at 23.  EOUSA issued its final response to the 2019 FOIA request in December 2019.  EOUSA released eleven pages of publicly available regulations but denied the request in all other respects, relying on FOIA Exemption 3, which

protects documents "specifically exempted from disclosure by statute."  First Wilkinson Decl. Exh. J, ECF No. 7-4 at 34 (citing 5 U.S.C. § 552(b)(3)).  The agency explained: "Since Rule 6(e) of the Federal Rules of Criminal Procedure (Pub. L. 95-78, 91 Stat. 319 (1977)) provides that grand jury proceedings shall be secret, disclosure of grand jury information is prohibited by law."  Id.  Selgjekaj administratively appealed that decision, but the Department of Justice's Office of Information Policy affirmed, explaining: "To the extent that responsive grand jury records exist, any such records would be protected from disclosure pursuant to 5 U.S.C. § 552(b)(3). . . . Because any such records responsive to your request would be categorically exempt from disclosure, EOUSA was not required to conduct a search for the requested records." First Wilkinson Decl. Exh. L, ECF No. 7-4 at 42.

Still dissatisfied with EOUSA's responses to his requests, Selgjekaj filed this lawsuit in July 2020, seeking an order requiring EOUSA to produce all requested documents.[1]  EOUSA moved for summary judgment in December 2020.  Selgjekaj responded with his own motion for summary judgment in February 2021.  After receiving Selgjekaj's summary judgment motion, EOUSA decided, in what it describes as "an abundance of diligence," to conduct a search for grand jury materials responsive to the 2019 FOIA request.  Second Wilkinson Decl. ¶ 20, ECF No. 15-2.  This search located five grand jury transcripts and four pages of other material, all of which EOUSA continues to withhold under Exemption 3.  Id. ¶¶ 21-22.

Both sides' motions for summary judgment are now fully briefed and ripe for decision.

---

[1] The Complaint names several federal agency defendants, but for convenience, the Court will refer to the defendants collectively as "EOUSA."

## II.   Legal Standard

Summary judgment is the typical and appropriate vehicle to resolve FOIA disputes.  See

Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  "The agency is

entitled to summary judgment if no material facts are genuinely in dispute and the agency

demonstrates 'that its search for responsive records was adequate, that any exemptions claimed

actually apply, and that any reasonably segregable non-exempt parts of records have been

disclosed after redaction of exempt information.'"  Prop. of the People, Inc. v. Office of Mgmt.

& Budget, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting Competitive Enter. Inst. v. EPA,

232 F. Supp. 3d 172, 181 (D.D.C. 2017)).

To prevail on the adequacy of its search, an agency "must show that it conducted a search

reasonably calculated to uncover all relevant documents."  Machado Amadis v. U.S. Dep't of

State, 971 F.3d 364, 368 (D.C. Cir. 2020) (internal quotation marks omitted).  "Agencies can

satisfy this burden through a reasonably detailed affidavit, setting forth the search terms and the

type of search performed, and averring that all files likely to contain responsive materials (if such

records exist) were searched."  Id. (internal quotation marks omitted).  Such affidavits are

entitled to "a presumption of good faith, which cannot be rebutted by purely speculative claims

about the existence and discoverability of other documents."  Id.

In determining whether any withholdings were proper, the Court must construe FOIA's

enumerated exemptions narrowly.  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32

(D.C. Cir. 2002).  The government may satisfy its burden through agency declarations that

"describe[] the justifications for withholding the information with specific detail" and

"demonstrate[] that the information withheld logically falls within the claimed exemption."

ACLU v. Dep't of Def., 628 F.3d 612, 619 (D.C. Cir. 2011).  "Such declarations are entitled to a

presumption of good faith, and the court can award the agency summary judgment based solely

on the information so provided."  Judicial Watch, Inc. v. CIA, 310 F. Supp. 3d 34, 41 (D.D.C.

2018).  But agency declarations will not support summary judgment if the plaintiff puts forth

contrary evidence or demonstrates the agency's bad faith.  ACLU, 628 F.3d at 619.

## III.  Analysis

The parties dispute the adequacy of EOUSA's searches and the propriety of its

withholdings for both the 2018 and 2019 FOIA requests.  The Court will address each request in

turn.

### A.  2018 FOIA Request

The record establishes that EOUSA is entitled to partial summary judgment as to

Selgjekaj's 2018 request.  EOUSA has not carried its burden to show that it conducted an

adequate search for records responsive to this request, but the agency has sufficiently justified its

decision to withhold or redact some of the documents it found.

Regarding its search, EOUSA submitted a declaration from Angelia Johnson, a FOIA

"point of contact" at the United States Attorney's Office for the Northern District of Ohio.

Johnson Decl. ¶ 1, ECF No. 15-1.  Johnson states that after receiving the 2018 request, she sent it

to "AUSA Brennan,"[2] who promptly responded.  Id. ¶ 3.  Later, Brennan provided information to

Johnson about the search she had conducted.  Specifically, Brennan "indicated that she had

reviewed the N: drive (her individual drive on the office server), the Y: drive (a shared drive on

the office server), her desktop computer, and hard copy files retained on our fifth floor."  Id. ¶ 5.

---

[2] "AUSA Brennan" appears to be Bridget M. Brennan, who is currently the Acting U.S. Attorney for the Northern District of Ohio and who, according to public records, previously served as an Assistant U.S. Attorney on the legal team that prosecuted Selgjekaj.

In addition to Johnson's declaration, EOUSA submitted declarations from EOUSA Attorney-Advisor Justin P. Wilkinson, who states that "[g]enerally," a search pursuant to a FOIA request like Selgjekaj's 2018 request "would involve a name and keyword search of [the U.S. Attorney's Office's] case management database—CaseView.  In addition, the attorneys of record would be contacted to search their files and locate any hardcopy documents that may be responsive." Second Wilkinson Decl. ¶ 7, ECF No. 15-2.

These declarations fall short of establishing beyond genuine dispute that EOUSA conducted a reasonable search.  "To satisfy the dictates of FOIA, [EOUSA] must, at a minimum, 'aver that it has searched all files likely to contain relevant documents.'" Wisdom v. U.S. Trustee Program, 232 F. Supp. 3d 97, 116 (D.D.C. 2017) (quoting Am. Immigration Council v. Dep't of Homeland Sec., 21 F. Supp. 3d 60, 71 (D.D.C. 2014)).  "Where the government . . . fails to make such an attestation, courts have typically found that an issue of material fact exists as to the adequacy of the search." Id. (collecting cases); see also Sarras v. U.S. Dep't of Justice, No. 19-cv-861 (CRC), slip op. at 9 (D.D.C. Aug. 5, 2021) (denying summary judgment because agency declarant "stopped short of attesting" that the files searched were "likely to contain *all* responsive records" (emphasis in original)).  Here, EOUSA's declarants say nothing about whether the agency has other files or databases that were not searched but would likely contain responsive records.

Nor do the declarations "identify the terms searched or explain how the search was conducted," Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990), beyond identifying the places searched and pointing to EOUSA's "[g]eneral[]" practice of searching by "name and keyword," Second Wilkinson Decl. ¶ 7.  One might fairly assume that AUSA Brennan searched the relevant drives for Selgjekaj's case records using his name, as is EOUSA's

general practice.  See Second Wilkinson Decl. ¶ 7.  But EOUSA's declarants do not say so explicitly.  "Even if the Court can make 'reasonable guesses' as to the agency's decision-making, . . . summary judgment is nonetheless inappropriate 'in the absence of specific clarification.'" Sarras, No. 19-cv-861 (CRC), slip op. at 9 n.8 (quoting Negley v. FBI, 169 F. App'x 591, 595 (D.C. Cir. 2006)).

On this record, the Court cannot definitively determine whether EOUSA's search for records responsive to Selgjekaj's 2018 FOIA request was "reasonably calculated to uncover all relevant documents."  Machado Amadis, 971 F.3d at 368.  Neither side is entitled to summary judgment on this issue.[3]

EOUSA's motion fares better as to its withholdings of specific responsive records. Pursuant to Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), EOUSA provided an index of documents that were found responsive to the 2018 FOIA request but fully or partially withheld, along with the bases for those withholdings.  First Wilkinson Decl. Exh. A, ECF No. 7-4.  The Vaughn index consists of just two entries.

First, EOUSA partially withheld three pages, consisting of a "Criminal Designation Form originating from the U.S. District Court for the Northern District of Ohio" with two attachments,

---

[3] In reaching this conclusion, the Court does not rely on Selgjekaj's assertion that he "did not receive a 'certified copy' of the Grand Jury Indictment" against him.  Pl. Statement of Material Facts at 13, ECF No. 10.  "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."  Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003).  Therefore, the fact that EOUSA evidently did not locate a "certified copy" of the indictment does not prove that its search was inadequate.  Nor would EOUSA be obligated to create a "certified copy" of the indictment if it conducted a reasonable search and found only an uncertified copy.  See Nat'l Sec. Counselors v. CIA, 969 F.3d 406, 409 (D.C. Cir. 2020) ("FOIA . . . only requires disclosure of documents that already exist, not the creation of new records not otherwise in the agency's possession.").

under FOIA Exemptions 6 and 7(C).  Id.  EOUSA explained that it redacted "personally identifiable information (PII) of [U.S. Attorney's Office] and Court staff who were administratively involved in the prosecution of Plaintiff," as well as "PII of Co-Defendants."  Id. More specifically, EOUSA withheld "names, telephone numbers, and street addresses."  Second Wilkinson Decl. ¶ 36.  According to EOUSA, disclosure of this information "could result in the harassment of these individuals or risk their personal safety."  First Wilkinson Decl. Exh. A; see also Second Wilkinson Decl. ¶ 38.

Under Exemption 7(C), an agency may withhold "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7).  After an agency identifies a privacy interest under Exemption 7(C), it "may nonetheless be required to disclose the documents if the individual seeking the information demonstrates a public interest in the information that is sufficient to overcome the privacy interest at issue."  Boyd v. Crim. Div. of U.S. Dep't of Justice, 475 F.3d 381, 386-87 (D.C. Cir. 2007).  "In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest.'"  Id. at 387 (quoting Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004)).

The parties do not appear to dispute, nor does the Court doubt, that the redacted records were compiled for law enforcement purposes.  EOUSA has also shown that removing its redactions "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Disclosure of the "names, address[es,] and telephone number of [Assistant U.S. Attorneys], legal assistants, law enforcement officers," and other

individuals mentioned in law enforcement records would clearly implicate "cognizable privacy interests." Bernegger v. EOUSA, 334 F. Supp. 3d 74, 89 (D.D.C. 2018).  Selgjekaj has not identified any specific public interest for the Court to balance against these privacy interests. Instead, he argues that EOUSA has made "no effort to explain how [its] rationale for 'withholding' documents under FOIA Exemption (b)(7)(C) applies to any particular document, grouping of documents, or even abstract type of document that plaintiff has requested," and that it is not "clear from the record whether Mr. Wilkinson or anyone else at the EOUSA has even actually reviewed the plaintiff's responsive records."  Pl. Statement of Material Facts at 10.  The Court disagrees.  It was appropriate for EOUSA to group its redactions of personal information together in the Vaughn index and provide a single rationale for redacting such information throughout the Criminal Designation Form and attachments.  And the record shows that "EOUSA's staff conducted a detailed, line-by-line review" of the responsive records located in the agency's search.  Second Wilkinson Decl. ¶ 45.  Accordingly, the Court is satisfied that Exemption 7(C) justifies the redactions from the Criminal Designation Form and attachments. There is no need to address whether Exemption 6 also protects this information.

Second, EOUSA fully withheld the U.S. Attorney's Office "File Jacket" for its prosecution of Selgjekaj, invoking FOIA Exemptions 5, 6, and 7(C).  First Wilkinson Decl. Exh. A.  The Court finds that this document is protected by the attorney work-product privilege and therefore falls within Exemption 5.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption "incorporates the privileges that the Government may claim when litigating against a private party, including the . . . attorney work product privilege[.]"  Abtew v.

U.S. Dep't of Homeland Sec., 808 F.3d 895, 898 (D.C. Cir. 2015).  The attorney work-product

privilege, in turn, "shields materials prepared in anticipation of litigation or for trial by or for

another party or by or for that other party's representative (including the other party's attorney,

consultant, surety, indemnitor, insurer, or agent)."  McKinley v. Bd. of Governors of the Fed.

Reserve Sys., 647 F.3d 331, 341 (D.C. Cir. 2011) (internal quotations and citation omitted).

"The primary purpose of this privilege is to protect against disclosure the mental impressions,

conclusions, opinions, or legal theories of an attorney or other representative of a party

concerning litigation."  Heggestad v. U.S. Dep't of Justice, 182 F. Supp. 2d 1, 7 (D.D.C. 2000).

The record in this case shows that the "jacket to the case file for the prosecution of

[Selgjekaj]" contains "notes that, if disclosed, would reveal the government Attorneys' legal

strategies, research, opinion, and legal impression of the strength or weakness of their criminal

case against [Selgjekaj]."  Second Wilkinson Decl. ¶ 35.  The file jacket thus falls squarely

within the work-product privilege.  It naturally follows that this document is exempt from FOIA.

See Judicial Watch, Inc. v. Dep't of Justice, 432 F.3d 366, 369 (D.C. Cir. 2005) (recognizing in

FOIA case that work-product privilege "should be interpreted broadly and held largely

inviolate").

The Court also finds that, although EOUSA could have been more explicit on this point,

it has satisfied its burden to show that "the agency reasonably foresees that disclosure" of the file

jacket "would harm" the interests protected by the work-product privilege.  5 U.S.C. §

552(a)(8)(A)(i)(I).  "The foreseeable harm requirement imposes an independent and meaningful

burden on agencies."  Reporters Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 369 (D.C.

Cir. 2021) (cleaned up).  However, the analysis of whether an agency has carried this burden "is

context specific."  Id. at 370.  A court may find the requirement satisfied if "[t]he very context

10

and purpose of" the withheld document "make the foreseeability of harm manifest."  Id. at 372.

Here, the record shows that the file jacket was prepared in contemplation of a complex financial

fraud prosecution.  It is hardly debatable that the government's ability to prosecute such cases

would be impeded if its attorneys were deprived of "a 'zone of privacy' within which to think,

plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories."

Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 864 (D.C. Cir. 1980); cf. also

Ecological Rights Found. v. EPA, No. 19-980 (BAH), 2021 WL 535725, at *32 (D.D.C. Feb. 13,

2021) ("When invoking the attorney-client privilege," unlike the deliberative process privilege,

"an agency likely does not need to reach far beyond the fact of disclosure to show foreseeable

harm.").  The file jacket thus bears "particularized indicia of foreseeable harm," Reporters

Comm. for Freedom of the Press, 3 F.4th at 372, and was properly withheld.

   Finally, despite Selgjekaj's arguments to the contrary, EOUSA has established that it

complied with its obligation to release "[a]ny reasonably segregable portion of" the records it

located that contained exempt material.  5 U.S.C. § 552(b).  Wilkinson avers that "[i]n reviewing

the responsive material, EOUSA's staff conducted a detailed, line-by-line review" and found that

"[t]he responsive material was either exempt itself or was so intertwined with non-exempt

information that segregation of the non-exempt information was not reasonably possible without

revealing exempt information or leaving nothing but meaningless words or sentence fragments."

Second Wilkinson Decl. ¶ 45.  This attestation is satisfactory.  See De Sousa v. CIA, 239 F.

Supp. 3d 179, 203 (D.D.C. 2017) (agencies "met their segregability burdens by submitting

Vaughn indexes, in combination with the attestations of their respective declarants that

documents were reviewed 'on a line-by-line basis' and no further segregation would be

possible"); <u>Gellman v. Dep't of Homeland Sec.</u>, No. 16-cv-635 (CRC), 2021 WL 673905, at *7 (D.D.C. Feb. 22, 2021) (same).

In sum, EOUSA has justified its withholdings of records responsive to Selgjekaj's 2018 FOIA request, but there are genuine disputes that preclude summary judgment as to the adequacy of its search pursuant to that request.

B.  <u>2019 FOIA Request</u>

Turning to Selgjekaj's 2019 FOIA request, the Court again finds that EOUSA is entitled to partial summary judgment.  EOUSA correctly determined that it was not obligated to search for most of the categories of grand jury materials Selgjekaj requested, but the agency has not carried its burden as to one category.

FOIA Exemption 3 allows agencies to withhold documents "specifically exempted from disclosure by statute," if the exempting statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue."  5 U.S.C. § 552(b)(3).  One such statute is Federal Rule of Criminal Procedure 6(e), which generally prohibits disclosure of any "matter occurring before the grand jury."  Fed. R. Crim. P. 6(e)(2)(B); <u>see also</u> <u>Senate of the Commonwealth of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice</u>, 823 F.2d 574, 582 (D.C. Cir. 1987) (recognizing that FOIA Exemption 3 incorporates Rule 6(e)).  "Not all material that relates to a grand jury, however, is exempt as a matter of law."  <u>Bagwell v. U.S. Dep't of Justice</u>, No. 15-cv-531 (CRC), 2015 WL 9272836, at *3 (D.D.C. Dec. 18, 2015).  The applicability of Rule 6(e) turns on "whether disclosure of the information requested would tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the

deliberations or questions of jurors, and the like." Lopez v. Dep't of Justice, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (internal quotation marks omitted).

 As already noted, EOUSA initially performed no search for any of the grand jury materials enumerated in Selgjekaj's 2019 request, relying on Exemption 3 and Rule 6(e). During this litigation, EOUSA did search for those materials, but it does not concede that it was required to do so; rather, the agency says it acted "out of an abundance of diligence." Second Wilkinson Decl. ¶ 20.

 A fellow judge of this court recently dealt with a virtually indistinguishable set of facts. In Flete-Garcia v. U.S. Department of Justice, an incarcerated person requested essentially the same grand jury records Selgjekaj seeks here: "(1) orders reflecting the commencement, termination, and extensions of the grand jury; (2) transcripts of the instructions and charges given to any grand jury; (3) '[a]ll [g]rand [j]ury voting records;' and (4) attendance records, 'including names, times, and dates, of all [g]rand [j]urors.'" No. 19-2382 (RDM), 2021 WL 1146362, at *7 (D.D.C. Mar. 25, 2021). As in this case, EOUSA declined to search for those records, reasoning that any such records would be exempt under FOIA Exemption 3 and Rule 6(e). Id. at *3. Judge Randolph D. Moss agreed with EOUSA that grand jury transcripts, voting records, and attendance records were categorically exempt because their disclosure would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." Id. at *7 (quoting Lopez, 393 F.3d at 1349). However, Judge Moss held that EOUSA did not carry its burden as to the request for "orders that reflect the [c]ommencement, [t]ermination, and any extensions of the [g]rand [juries] that heard evidence in" the plaintiff's case. Id. at *8.

The Court agrees with the reasoning of <u>Flete-Garcia</u>.  EOUSA need not search for "[t]ranscripts of the instructions and charges given to any Grand Jury that heard evidence in this matter," First Wilkinson Decl. Exh. G, ECF No. 7-4 at 23, as those transcripts are "the prototypical grand jury material exempt from disclosure under Rule 6(e)[ ] and are thus protected from disclosure by Exemption 3."  <u>Flete-Garcia</u>, 2021 WL 1146362, at *7 (quoting <u>Borda v. Dep't of Justice, Crim. Div.</u>, 306 F. Supp. 3d 306, 317 (D.D.C. 2018)).  "Similarly, for the attendance records that Plaintiff seeks, their disclosure would require revealing 'the identities of . . . jurors,' which is also foreclosed by Rule 6(e)."  <u>Id.</u> (quoting <u>Boyd v. EOUSA</u>, 87 F. Supp. 3d 58, 83 (D.D.C. 2015)).  Selgjekaj's "request for grand jury voting records would also require disclosure of core, protected information," as "[v]oting records clearly constitute a 'secret aspect' of the grand jury's investigation."  <u>Id.</u> (quoting <u>Lopez</u>, 393 F.3d at 1349).

By contrast, to the extent Selgjekaj seeks "[a]ll orders that reflect the Commencement, Termination, and any extensions of the Grand Jurys that heard evidence in this matter," First Wilkinson Decl. Exh. G, ECF No. 7-4 at 23, it is "not immediately evident why such orders would 'tend[ ] to reveal some secret aspect of the grand jury's investigation.'"  <u>Flete-Garcia</u>, 2021 WL 1146362, at *8 (quoting <u>Abakporo v. EOUSA</u>, No. 18-846 (TJK), 2019 WL 1046661, at *2 (D.D.C. Mar. 5, 2019)).  Wilkinson asserts that "[d]isclosing the location or time where a grand jury is convened allows the requester to possibly identify witnesses by reverse engineering the location of co-defendants and family" based on other known information.  Second Wilkinson Decl. ¶ 32.  At first blush, this explanation sounds plausible.  The D.C. Circuit has accepted a similar rationale for withholding "the dates and times of day the grand jury convened to consider" an individual's case.  <u>Murphy v. EOUSA</u>, 789 F.3d 204, 209 (D.C. Cir. 2015).  "Importantly, however, the D.C. Circuit contrasted the disclosure of 'the dates and times of day

the grand jury [met] to consider a specific case,' which risked disclosure of specific witnesses, with a mere disclosure of 'when the grand jury's work began and ended[.]'" Flete-Garcia, 2021 WL 1146362, at *8 (quoting Murphy, 789 F.3d at 212) (some internal quotation marks omitted). Courts have repeatedly rejected attempts to treat the latter, more general, type of scheduling information as categorically protected by Rule 6(e). See id.; In re Grand Jury Investigation, 903 F.2d 180, 182 (3d Cir. 1990) ("[D]isclosure of the commencement and termination dates of the grand jury does not disclose the essence of what took place in the grand jury room."); Abakporo, 2019 WL 1046661, at *1-3. This Court, too, declines to hold as a matter of law that EOUSA may categorically refuse to search for orders commencing, terminating, or extending grand juries. Cf. Bagwell, 2015 WL 9272836, at *4 (without an "affirmative demonstration of a nexus between disclosure and revelation of a protected aspect of the grand jury's investigation," agency "cannot rely on Exemption [3] to shield from disclosure everything it considers to be in some way 'related' to the grand jury's proceedings" (quoting Senate of Puerto Rico, 823 F.2d at 584)).

Moreover, the record does not establish whether EOUSA's initial failure to search for these orders was cured by its belated "supplemental search." Def. Opp'n to Pl. Cross-Mot. for Summ. J. at 2, ECF No. 15. The declarations before the Court fail to describe that search in reasonable detail. EOUSA's declarations provide evidence that two custodians at the U.S. Attorney's Office for the Northern District of Ohio searched for records responsive to the 2019 FOIA request in 2021. First, AUSA Brennan searched "the N: drive (her individual drive on the office server), the Y: drive (a shared drive on the office server), her desktop computer, and hard copy files retained on [the office's] fifth floor." Johnson Decl. ¶ 5. Second, "[t]he grand jury coordinator searched her files for any responsive records[.]" Id. ¶ 8. While the Court could hazard a guess as to the scope and manner of the search, these declarations do not "set[] forth the

15

search terms and the type of search performed," nor do they "aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby, 920 F.2d at 68.  Indeed, EOUSA does not even specify the "files" searched by the grand jury coordinator.  Johnson Decl. ¶ 8.

Accordingly, the Court has too little information to grant summary judgment to either side on the issue of Selgjekaj's request for orders commencing, terminating, or extending grand juries.  If EOUSA renews its summary judgment motion on this issue, it must submit more detailed affidavits showing that it conducted a search reasonably calculated to find all such orders; that EOUSA individually reviewed any such orders uncovered by the search; and that, if any such orders are withheld, the agency has valid, particularized reasons for those withholdings. EOUSA has, however, carried its burden as to all other aspects of the 2019 FOIA request.

**IV.   Conclusion**

For the foregoing reasons, the Court will grant [7] Defendants' Motion for Summary Judgment in part and deny it in part.  Defendants' Motion will be denied as to the adequacy of EOUSA's search for records responsive to plaintiff's 2018 FOIA request; denied as to the portion of plaintiff's 2019 FOIA request seeking "[a]ll orders that reflect the Commencement, Termination, and any extensions of the Grand Jurys that heard evidence in this matter"; and granted in all other respects.  The Court will further deny [10] Plaintiff's Motion for Summary Judgment.  A separate Order shall accompany this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:  August 6, 2021

16