UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GEZIM SELGJEKAJ**, <br><br> Plaintiff, <br><br> v. <br><br> **EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS**, *et al.*, <br><br> Defendants. | Case No. 20-cv-2145 (CRC) |

## MEMORANDUM OPINION

*Pro se* plaintiff Gezim Selgjekaj sued the Executive Office for United States Attorneys ("EOUSA") under the Freedom of Information Act ("FOIA"), seeking records related to his 2013 indictment in the Northern District of Ohio. This Court previously granted only partial summary judgment to EOUSA, due to deficiencies in the declarations describing the agency's search for records. EOUSA has since submitted an updated declaration establishing that it conducted adequate searches. The Court will therefore grant EOUSA's renewed summary judgment motion in full.

### I. Background

The Court presumes familiarity with the background of this case from its prior opinion, Selgjekaj v. Exec. Office for U.S. Attorneys, No. 20-cv-2145 (CRC), 2021 WL 3472437 (D.D.C. Aug. 6, 2021), so it will only briefly recount the facts here.

In 2013, Mr. Selgjekaj was indicted in the Northern District of Ohio for fraud and other alleged crimes in connection with the collapse of the St. Paul Croatian Federal Credit Union. United States v. Selgjekaj, No. 1:13CR09, 2015 WL 5172958, at *1 (N.D. Ohio Sept. 3, 2015). A jury convicted him in 2015, id., and he is now serving a lengthy prison sentence.

Selgjekaj lodged two FOIA requests with EOUSA[1] requesting certain records related to those prior criminal proceedings.  The first came in August 2018 and sought "[a]ll Grand Jury indictment brought against myself, GEZIM SELGJEKAJ, as a defendant along with ALL attached information sheets, in the United States District Court for the Northern District of Ohio Eastern Division."  See Selgjekaj, 2021 WL 3472437, at *1 (citing First Wilkinson Decl. Ex. B, ECF No. 7-4 at 5).  After searching for responsive records, EOUSA released some pages in full, released others with some redactions, and withheld three pages in full.  Id.

The second request followed in May 2019.  As relevant here, this request sought "[a]ll orders that reflect the Commencement, Termination, and any extensions of the Grand Jurys that heard evidence in this matter."  Selgjekaj, 2021 WL 3472437, at *1 (citing First Wilkinson Decl. Ex G, ECF No. 7-4 at 23).  EOUSA released eleven pages of publicly available regulations but denied the request in all other respects.  Relying on FOIA Exemption 3 and Federal Rule of Criminal Procedure 6(e), the agency initially declined even to conduct a search for non-public grand jury materials responsive to the request.  See id.

Then came this lawsuit, which Selgjekaj filed in July 2020.  EOUSA moved for summary judgment in December 2020, and Selgjekaj cross-moved in February 2021.  At that point, EOUSA decided in what it described as "an abundance of diligence," Second Wilkinson Decl. ¶ 20, ECF No. 15-2, to conduct a search for responsive grand jury materials.  Selgjekaj, 2021 WL 3472437, at *2. That search located grand jury transcripts and other records, all of which the agency still withheld under Exemption 3.  Id.

---

[1] The Complaint names several federal agency defendants, but for convenience and consistency with its prior opinion, the Court refers to them collectively as "EOUSA."

In August 2021, this Court granted in part and denied in part EOUSA's summary judgment motion and denied Selgjekaj's cross-motion.  Although the Court sided with the agency on its withholdings and redactions of certain material, it concluded that EOUSA had "not carried its burden to show that it conducted an adequate search for records responsive to [the 2018 FOIA] request."  <u>Selgjekaj</u>, 2021 WL 3472437, at *2.  This conclusion rested on two critical deficiencies in the declarations.  First, the declarations did not state "whether the agency has other files or databases that were not searched but would likely contain responsive records."  <u>Id.</u> at *3.  Second, they did not identify the agency's search terms or describe how it searched for records.  <u>Id.</u>  With respect to the 2019 FOIA request, the Court held that EOUSA could not "categorically refuse to search for orders commencing, terminating, or extending grand juries."  <u>Id.</u> at *7.  Nor did EOUSA's belated supplemental search cure the initial failure to search for such orders.  The declarations again lacked reasonable detail on the search; they did "not even specify the 'files' searched by the grand jury coordinator."  <u>Id.</u>

Now the parties are back before the Court, and EOUSA's renewed motion for summary judgment—supported by an updated declaration describing the relevant searches—is ripe for decision.

## II.   Legal Standard

Summary judgment is the typical and appropriate vehicle to resolve FOIA disputes.  <u>See</u> <u>Defs. of Wildlife v. U.S. Border Patrol</u>, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  "The agency is entitled to summary judgment if no material facts are genuinely in dispute and," as relevant for the instant motion, "the agency demonstrates 'that its search for responsive records was adequate.'"  <u>Prop. of the People, Inc. v. Office of Mgmt. & Budget</u>, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (citation omitted).

To prevail on the adequacy of its search, an agency "must show that it 'conducted a search reasonably calculated to uncover all relevant documents.'" Machado Amadis v. U.S. Dep't of State, 971 F.3d 364, 368 (D.C. Cir. 2020) (citation omitted). "Agencies can satisfy this burden through a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" Id. (citation omitted). Such affidavits are entitled to "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." Id. (citation omitted).

### III. Analysis

Selgjekaj again contests the adequacy of the searches for both the 2018 and 2019 FOIA requests. In support of its searches, EOUSA submits a new declaration from Angelia Johnson, a FOIA "point of contact" at the U.S. Attorney's Office for the Northern District of Ohio. Second Johnson Decl. ¶ 1, ECF No. 31-2. As that declaration explains, the two searches were conducted "[i]n the same manner," id. ¶¶ 14–15, so the challenges to each search rise and fall together.

Again, the Court found two shortcomings in the prior declarations regarding the searches: (1) EOUSA said "nothing about whether the agency has other files or databases that were not searched but would likely contain responsive records," Selgjekaj, 2021 WL 3472437, at *3; and (2) the declarations did not "identify the terms searched or explain how the search was conducted." Id. (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)). While the Court could have "fairly assume[d]" certain specifics about those points and made "'reasonable guesses' as to the agency's decision-making," the declarations needed to be more "explicit[]" to warrant summary judgment for EOUSA. See id. (quoting Sarras v. U.S. Dep't of

4

Justice, No. 19-cv-0861 (CRC), ECF No. 44, slip op. at 9 n.8 (D.D.C. Aug. 5, 2021) (Cooper, J.)); see also Negley v. FBI, 169 F. App'x 591, 595 (D.C. Cir. 2006).

The updated declaration fixes both problems. This time EOUSA does aver that it searched "all systems/files likely to contain [potentially-responsive] material." Second Johnson Decl. ¶ 4; id. ¶ 11 (further specifying that "there were no other files or systems" the U.S. Attorney's Office "could search that were likely to contain documents relevant to [Selgjekaj's] request."). The declaration also notes the computer drives, files, and systems searched. Id. ¶¶ 5, 8. And it provides the search terms used, namely, "Jimmy," "Gezim," and "Selgjekaj." Id. ¶¶ 6, 9 (further noting the Assistant U.S. Attorney ("AUSA") performing the search "did not narrow the search terms any further"); id. ¶ 7 (specifying the terms used for the grand jury e-file). For hard-copy records, the AUSA performing the search undertook a "page-by-page" review "to locate any responsive material." Id. ¶ 7. That is, the AUSA "searched the relevant drives for Selgjekaj's case records using his name, as is EOUSA's general practice." See Selgjekaj, 2021 WL 3472437, at *3. The updated declaration thus specifies and makes explicit what the Court could previously only assume.

The analysis is mostly the same with respect to the 2019 FOIA request, as to which EOUSA has now conducted a search and found no responsive material. Second Johnson Decl. ¶ 17. This search was done "[i]n the same manner," using the same search terms, as the search conducted for the 2018 request, except that it looked for "orders reflecting commencement, termination, or extension of grand jury proceedings." See id. ¶¶ 14–17. The declaration now "specif[ies] the 'files' searched by the grand jury coordinator," Selgjekaj, 2021 WL 3472437, at *7, namely, the e-file for "GJ Panel 12-1-G that was convened on January 3, 2013," and the relevant hard-copy records for "panel 12-1-G." Second Johnson Decl. ¶ 16 (again noting this

search was "page-by-page"). And, as with the 2018 request, the declaration states that "[t]here are no other files or systems . . . that are likely to contain documents relevant to [the 2019 FOIA] request." Id. ¶ 17.

Selgjekaj's rebuttals are not persuasive. His primary contention is that the EOUSA's affidavit is "[d]eceptive" and "submitted in bad faith," see, e.g., Pl. Opp'n at 2, 10, 12, ECF No. 33, but these bare, unsupported accusations are not enough to overcome the presumption of good faith extended to agency FOIA declarations. See SafeCard Servs. Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (holding that "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" (citation omitted)). There is no evidence of bad faith here.

Selgjekaj also faults EOUSA for not using his proposed search terms, like "Grand Jury Indictment," "found," "returned," or "Information sheet." See Pl. Opp'n at 5. But the Court finds that the agency's search terms—Selgjekaj's first and last name, plus a common nickname ("Jimmy")—are reasonable, so it "will not second guess the agency regarding whether other search terms might have been superior." Liberation Newspaper v. U.S. Dep't of State, 80 F. Supp. 3d 137, 146–47 (D.D.C. 2015). A "plaintiff's insistence on [his] own preferred search terms does not undermine the *reasonableness* of the [agency's] search terms." Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency, 113 F. Supp. 3d 313, 339 (D.D.C. 2015). At any rate, Selgjekaj's proposed terms would surely return a massive amount of material unrelated to *his* case and thus irrelevant to his FOIA requests.

To recap: In the first summary-judgment round, EOUSA's declarations failed to provide some of the specific details required for the Court to find that the agency's search was adequate. But Selgjekaj's requests did not call for a particularly complex search, meaning the agency did

not need to provide too much more detail; rather, it simply had to submit a "reasonably detailed affidavit." Machado Amadis, 971 F.3d at 368. EOUSA has now satisfied that requirement by describing the search of relevant files and drives for Selgjekaj's case records using his first and last name, as well as a nickname. This search "follow[ed] through on obvious leads to discover [the] requested documents" and was "reasonably calculated to uncover all relevant documents." See Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (citations omitted). Accordingly, EOUSA is entitled to summary judgment.

## IV. Conclusion

For these reasons, the Court will grant [31] Defendants' Motion for Summary Judgment. A separate Order shall accompanies this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: June 23, 2022